SAVOY, Judge.
Billy R. Babineaux instituted this workmen’s compensation suit against his employer, Coastal Contractors, Inc., and its insurer, Travelers Insurance Company, seeking to recover total and permanent benefits for 500 weeks as the result of a back injury received while working for his employer on September 30, 1969, when digging a ditch with a pick and shovel. Defendants answered, stating that plaintiff received slight injuries while working as a carpenter’s helper, and that they had paid him compensation for 18 weeks at the rate of $45.00 per week, and $203.00 in medical and related expenses. However, defendants averred that plaintiff was fully able to resume his former occupation without pain or disability of any kind on or before February 4, 1970.
A trial on the merits resulted in a judgment in favor of plaintiff for compensation at the rate of $45.00 per week for the period from February 3, 1970, to April 15, 1970, and for an additional $40.76 as payment for a bill to the Morrow Hospital Pharmacy. The trial court expressly rejected plaintiff’s claim for any benefits past April 15, 1970, and from this decision plaintiff has appealed contending the trial court erred in ruling that plaintiff’s disability terminated on April 15, 1970; that the trial court erred in admitting certain movie films into evidence; and that the trial court erred in failing to order the reopening of the evidence for the purpose of obtaining the results of a myelogram or discogram to be performed on plaintiff.
After a thorough review of the evidence presented in the transcript, we are unable to say that the trial court committed manifest error in its factual finding that plaintiff’s disability terminated on April 15, 1970. The trial court, in a well-written opinion, stated in part:
“We have no difficulty in concluding that the evidence fails to show that plaintiff’s injury was diagnosed as a low thoracic disc injury. There is no testimony or evidence whatsoever to support that allegation. We have no difficulty in concluding from the evidence, however, that plaintiff did receive a sprain, or strain, in his back that disabled him for a few months.
“The only evidence that supports plaintiff’s claim is his own testimony, and it consists only of complaints of pain that he contends disables him. It is supported by the testimony of his wife and some of his neighbors, but they say only that plaintiff has complained in their presence, otherwise he acts, walks and drives a car like he always has, but he does not work or carry heavy things.
“The weight of plaintiff’s claim regarding his pain loses weight as we try to determine its significance, because it changes in nature and it moves from one area to another having no common source for it.
“This testimony falls far short of discharging plaintiff’s burden of establishing his claim for permanent disability by a preponderance of the evidence.
“Although he was examined or treated by four doctors, not one could find any objective symptoms or pathological or other reasons for his continuing pain. * * *
“Dr. Morrow, a general practitioner in Arnaudville, examined and treated plaintiff from the day of his accident. But, when it appeared that his findings did not explain the reason for plaintiff’s continuing complaint, he referred him to Dr. Guy Dunning of Lafayette, an orthopedist, who first saw him on November 7, 1969, approximately five weeks after the accident.
“When plaintiff first saw Dr. Morrow and began receiving his treatments of deep *819 heat, muscle relaxants and analgesics, the doctor diagnosed plaintiff’s injury as a muscle strain that would ordinarily heal in eight to ten weeks because he found muscle spasm in plaintiff’s back, a straightening of the lordotic curve in the back, limited motion accompanied by pain and the guarding of muscles. But plaintiff continued to complain of pain.
“On November 4, 1969, is the last time that Dr. Morrow treated the plaintiff in this series of treatments. He then referred him to Dr. Dunning.
“Dr. Dunning first saw him on November 7. In his first examination he did not find the objective symptoms found by Dr. Morrow soon after the accident although plaintiff still complained of pain.
“Dr. Dunning also diagnosed plaintiff’s injury on the history he received as a muscle sprain and recommended physical therapy. He ordered the plaintiff to return for further examination and treatment in two weeks but the doctor did not report his findings on that visit. He ordered him to return again in two weeks, on December 5, and on that visit plaintiff complained still of having pain in his back but the therapist had reported to Dr. Dunning that plaintiff had improved and complained less.
“Plaintiff was again ordered to return on January 2, 1970. On that visit plaintiff’s complaints were the same but the doctor after a thorough orthopedic examination could find no objective symptoms to support the complaints as the plaintiff had no muscle spasm or other indication of pain or restriction, but the doctor did notice that the place where the plaintiff said he was hurting was in the lumbosacral joint about three fingers breadth to the right of the spine, whereas on his first visit plaintiff’s complaint was of pain over the thoracic vertebrae and he had no leg complaints. The doctor felt that plaintiff was able to return to work. * * *
“In December, plaintiff was also examined by another orthopedic surgeon, Dr. Allen Jackson, of the Baton Rouge Orthopedic Group.
“Dr. Jackson found that plaintiff’s right leg was about one inch shorter than his left, although Dr. Dunning testified that they were grossly equal in length and circumference. He could find no objective symptoms to support plaintiff’s complaints of pain. He again had plaintiff’s areas of complaint Xrayed. None of the Xrays had heretofore shown any irregularity. But Dr. Jackson testified that from the ones he had taken, it appears that plaintiff could have a slight narrowing of the lumbo-sacral joint with perhaps a defect on the left. However, he said that these may not be significant.
“He could not find any objective reason for plaintiff’s complaints, but by way of speculation, he said that perhaps the unequal length of plaintiff’s legs plus a structural defect in the lumbosacral area could contribute or aggravate a sprain in the lumbar spine.
“Dr. Jackson made it plain that he was only speculating.
“On April 15, 1970, the plaintiff was examined by a neurosurgeon, Dr. Peter Joseph Jannetta of New Orleans.
“Dr. Jannetta performed a complete neurological examination of the plaintiff and found no objective evidence to support plaintiff’s complaints except ‘exquisite tenderness over the posterior spine at thoracic level 11. The vertebrae were moderately tender over the lumbar posterior spines and over the upper sacral regions in the mid-line.’
“He did not say whether his findings would disable the plaintiff from doing work of a reasonable character but that is the last finding by any doctor of any objective symptoms of the plaintiff and we have concluded to accept that date as the termination of plaintiff’s disability. We are assuming, of course, that these findings did in fact disable the plaintiff.
*820 “At another examination on October 20, 1970, Dr. Jannetta did not find the tenderness he had found on his April 15, 1970 examination although plaintiff still complained of pain. The doctor was convinced that plaintiff did not have any nerve root impairment nor any evidence of central or peripheral nervous system disease. In fact, the doctor could not find anything wrong with plaintiff.
“This evidence clearly shows that there is no medical basis to support plaintiff’s complaint of pain and resulting disability from at least April 15, 1970, and then to extend it to that date from January 2, 1970 set by Dr. Dunning we have to assume that Dr. Jannetta’s findings of tenderness on that date resulted in plaintiff’s disability although there is no clear evidence that this tenderness disabled him.”
The trial court disregarded the movie films as they were taken in October, 1970, which was beyond the date during which compensation was awarded.
Plaintiff relies upon the case of Murphy v. Messenger, 258 La. 31, 245 So.2d 345 (1971), as authority for allowing lay testimony to establish disability when the medical testimony is conflicting. We have no quarrel with the principle of law enunciated in the Murphy case, supra, but we do not feel the facts of this case place it within the ambit of the Murphy case. In Murphy, the plaintiff had a ruptured disc which was surgically removed, and he was left with a resulting fifteen per cent partial permanent disability of the back and a ten per cent partial permanent disability of the body as a whole. There was testimony of an orthopedist other than the treating physician who felt plaintiff was unable to carry out all of the duties of his former occupation. And the lay testimony presented was almost unanimous that plaintiff could not get around like he had done prior to the accident. None of these factors are present in our case at bar, and the only real evidence of plaintiff’s continuing disability comes from his own subjective complaints.
We are of the opinion, as was the trial court, that plaintiff has failed to prove his disability by a preponderance of the evidence.
For the reasons assigned, the judgment of the trial court is affirmed at plaintiff’s costs.
Affirmed.